## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

### Introduction:

Beginning at least in or about February 28, 2017, and continuing through at least in or about March 2017, the Defendant, **NICHOLAS BRAYLAN** ("**BRAYLAN**"), a then-resident of Buenos Aires, Argentina, and current resident of North Carolina, knowingly and willfully conspired with others: to execute a scheme and artifice to defraud a victim financial institution, and to obtain the banking services of the victim financial institution by means of materially false and fraudulent pretenses, representations, promises, and omissions, thereby putting the victim financial institution at risk of loss, in violation of 18 U.S.C. § 1344, all in violation of 18 U.S.C. § 1349.

As part of the scheme to defraud, **BRAYLAN** and his co-conspirators falsified U.S. telephone and cable bills that were intended to show proof of a U.S. residential address to a U.S. bank for individuals who resided outside of the U.S. The accounts established by the U.S. bank were insured by the Federal Deposit Insurance Corporation ("FDIC"), and located in the District of Maryland. The purpose of this scheme was to obtain U.S. banking services for non-U.S. residents who would not have otherwise been able to obtain U.S. banking services. **BRAYLAN** himself electronically altered such documents that included U.S. residential addresses, including one such document that had been associated with a co-conspirator's family ("CO-CONSPIRATOR 1") and which contained a phone number associated with CO-CONSPIRATOR 1 to falsely show that their non-U.S.-based clients had U.S. residential addresses. A second co-conspirator ("CO-CONSPIRATOR 2") sent the falsified documents to a U.S. bank representative located in Prince George's County, Maryland, to obtain banking services at an FDIC-insured bank for **BRAYLAN**'s foreign client. The U.S. bank located in the District of Maryland relied on these falsified documents to open bank accounts for **BRAYLAN**'s foreign client.

### Background:

During the time period of the charged conduct, **BRAYLAN** worked for a financial consultancy firm with its headquarters outside of the United States ("CONSULTANCY"). Part of CONSULTANCY's business model was to provide U.S. banking solutions to foreign persons with no physical U.S. residency, meaning that they did not have a residential address in the United States. Specifically, CONSULTANCY arranged for U.S. bank accounts to be opened on behalf of foreign persons with no U.S. residency. **BRAYLAN** and other individuals working for CONSULTANCY compiled the supporting documents that U.S. banks required when submitting account opening applications. Frequently, the documents **BRAYLAN** and other co-conspirators

9

compiled and submitted to U.S. banks were either forged or altered to contain false information about their clients. Specifically, the documents submitted were designed to conceal the fact that their clients did not have a residential address in the United States; additionally, the account opening documents were intended to hide the fact that most of the clients were involved in the purchase and sale of U.S. dollar currency in Argentina and other parts of South America.

In the course of obtaining U.S. banking services for a specific non-U.S. client, ("CLIENT 1") and CLIENT 1's associated business entities, **BRAYLAN** knowingly falsified documents that the U.S. financial institution relied upon to prove a U.S. residential address. Specifically, **BRAYLAN** falsified a U.S. telephone company mobile telephone bill that he sent to CO-CONSPIRATOR 1, knowing that this falsified document was to be used as proof of a U.S. residential address for CLIENT 1 in obtaining banking services from a U.S. financial institution insured by the FDIC based in Prince George's County, Maryland. Further, **BRAYLAN** knew that, in fact, CLIENT 1 resided outside the United States and did not have a residential address within the United States.

But for the material misrepresentations **BRAYLAN** and his co-conspirators made to the U.S. financial institution about CLIENT 1's residency status, the FDIC-insured bank in Prince George's County, Maryland would not have opened an account for CLIENT 1 because CLIENT 1 was a foreign person with no U.S. residential address.

**Specific Conduct**:

On February 28, 2017, **BRAYLAN** received an email from CO-CONSPIRATOR 1 at his verified email address. In that email, CO-CONSPIRATOR 1 sent four names (including the name of CLIENT 1), each followed by a Florida-based address, to **BRAYLAN**. **BRAYLAN** understood that CO-CONSPIRATOR 1 was instructing **BRAYLAN** to alter documents to match the four names and addresses CO-CONSPIRATOR 1 sent, for the purpose of sending those documents to a U.S. bank to obtain U.S. banking services.

On March 2, 2017, **BRAYLAN** responded to CO-CONSPIRATOR 1 by stating the following: "here goes 1 & 2, meanwhile ill [sic] work on 3 & 4. Pleae [sic] check over just in case!" **BRAYLAN** attached falsified bills/statements containing the names and addresses which were the first two names and addresses CO-CONSPIRATOR 1 had provided in his/her previous (February 28, 2017) email. One of those falsified documents was sent to a U.S. bank in Prince George's County, Maryland, to open a bank account. Specifically, **BRAYLAN** attached a U.S. telephone company mobile telephone bill (the "PHONE BILL") falsified with the name of CLIENT 1, and containing the Sarasota, Florida-based address CO-CONSPIRATOR 1 had provided in his/her previous (February 28, 2017) email.

The telephone number listed on the PHONE BILL was actually CO-CONSPIRATOR 1's telephone number and this telephone number did not pertain to the U.S. telephone company on the PHONE BILL.

The Sarasota, Florida-based address was a mailing service in Sarasota, Florida, and not the residential address of CLIENT 1.

On March 3, 2017, **BRAYLAN** sent a second email to CO-CONSPIRATOR 1 with no text. **BRAYLAN** attached falsified bills/statements to this email containing the names and addresses which were the remaining two names and addresses CO-CONSPIRATOR 1 had provided in his/her February 28, 2017 email.

On March 6, 2017, CO-CONSPIRATOR 1 sent an email with the PHONE BILL as an attachment to CO-CONSPIRATOR 2. The PHONE BILL attachment was captioned with CLIENT 1's name, followed by "POA." "POA" meant "proof of address", as it pertained to the U.S. bank's requirement that any clients prove a U.S. residential address, and as **BRAYLAN** understood that a U.S. bank would require to provide banking services to CLIENT 1.

On March 13, 2017, CO-CONSPIRATOR 1 sent a second email to CO-CONSPIRATOR 2 with the PHONE BILL attached.

On March 18, 2017, CO-CONSPIRATOR 2 sent an email to an employee ("EMPLOYEE") at an FDIC-insured bank (the "BANK") in Prince George's County, Maryland. CO-CONSPIRATOR 2 sent this email in an effort to establish a bank account for a foreign person with no U.S. residential address – CLIENT 1 – at the BANK in Prince George's County, Maryland. The email from CO-CONSPIRATOR 2 to EMPLOYEE contained the PHONE BILL that **BRAYLAN** had materially falsified as an attachment. In the body of the email, CO-CONSPIRATOR 2 stated that the "U.S.A. Residential Address" for CLIENT 1 was the Sarasota, Florida-based address.

The email CO-CONSPIRATOR 2 sent to the BANK contained a material misrepresentation about the residential status of CLIENT 1. In the email, CO-CONSPIRATOR 2 represented that CLIENT 1 had a U.S. residential address, when in fact, CLIENT 1 did not have a U.S. residential address. The PHONE BILL attached to CO-CONSPIRATOR 2's email to the BANK was sent to the BANK to provide fabricated documentary support of the material misrepresentation.

The BANK – in reliance on the material misrepresentation included in the email and documentary support CO-CONSPIRATOR 2 sent – opened an account and began providing banking services to CLIENT 1 with the false understanding that CLIENT 1 was a U.S. resident. Specifically, the BANK opened bank accounts for CLIENT 1's business entities on or about April 5, 2017.

    The above-described scheme took place almost entirely outside the United States for the purpose of defrauding the U.S. bank in Prince George's County, Maryland, of banking services and putting that bank at risk of loss. The U.S. bank in Prince George's County, Maryland, would not have provided banking services for **BRAYLAN**'s client if the client's lack of a U.S. residential address had been truthfully and accurately represented to the bank.

SO STIPULATED:

_____
Mark Irish and Michael T. Parker
Trial Attorneys

_____
Nicholas Braylan
Defendant

_____
Blair Brown, Esq.
Counsel for Defendant

12